You may proceed. Thank you, Your Honor. Good morning, Judge Gregory, Judge Floyd, Judge Paula Baum. May it please the court. My name is Hannah Rogers Metcalf, and I have the privilege to be here today on behalf of the appellant Precious Freeman. I also have the honor to be here today arguing against my dear friend, Mr. Bill Watkins, and I appreciate the court accommodating the lawyers and conducting this argument over Zoom in light of the circumstances. The court has asked me to brief and argue two issues today. The first of those is whether or not Ms. Freeman's 210-month sentence was substantively reasonable. The second issue is, in effect, was whether Ms. Freeman's retained counsel was ineffective at sentencing. I'll address those issues in that order, unless the court would request that I do address them in a different order. Turning first to the question of substantive reasonableness of Ms. Freeman's sentence, Ms. Freeman contends the district court abused its discretion when it sentenced Freeman to 210 months and that the sentence was not substantively reasonable because it created unwarranted disparities between Freeman and similarly situated opioid defendants across the nation and within this circuit. It's important to note that the standard of review for substantive reasonableness is an abuse of discretion standard, but this standard is not a rubber stamp. As Judge Gregory, you noted in your concurrence in U.S. v. Evans, this is a when he said the major theme of Booker as well as Reeder was that the post-Booker sentencing regime would still promote the Sentencing Reform Act's goal of reducing sentencing disparities. The goal of the court in conducting appellate review is still to make sure that the sentence is reasonable and that there are not excessive disparities and that the appellate review should iron out sentencing differences. Let me ask you two questions together. One, it was a trial judge responsible for raising this issue, Sue Esponte, and is there some obligation on a district court to do any research on this issue of similarly situated defendants before sentencing? Your Honor, that is a excellent question and I think it weaves into the second issue. And I'm going to say, Your Honor, I'm not sure here. This unwarranted sentencing disparity at issue in this case was not readily apparent. This was a single defendant. It was not a multi defendant conspiracy and there's not a great deal of data within the District of South Carolina that would make this unwarranted disparity readily apparent. I would contend that a trial judge should maintain knowledge of current sentencing trends and standards. However, in the district and Your Honor, I did file an Andrews brief initially and was directed to address this issue by the court. But it was only upon reviewing detailed sentencing commission data and then I provided the graphs for the court, did it become readily apparent to me that Ms. Freeman's sentence was in fact, although a guideline sentence, a significant outlier from current trends for opioid defendants. Yes, Judge Quattlebaum. Ms. Metcalf, as I read the graphs and read your briefs, it looks like the argument is that if you look nationwide based on drug weight, there's an outlier. Is it correct that that does not take into account criminal history and offense level issues that may distinguish defendant sentences? No, Your Honor, that is not correct. The sentencing commission data allows, and this is what I tried to present when I presented this visually with the graphs, it does allow to control for both criminal history or for criminal history, drug weight, and offense level. So regardless, we can pinpoint in Ms. Freeman's sentence as compared to similarly situated defendants across relevant criminal history scores, as well as offense levels, which I tried to do in presenting that data. So she was a criminal history category two, and I provide comparators across criminal history category one, two, and three. I chose all three, in presenting the data because there is a paucity of people sentenced with this drug weight and those criminal histories, but it does allow you to control for all of those factors and to include or exclude weapons enhancements. So in this case, there was no weapon involved, so weapons enhancements were not included. But what the data shows, Your Honor, is that across all criminal history categories and all offense levels, in a broad range of drug weight, Ms. Freeman's sentence is an outlier. It is an outlier whether I include criminal history categories two or all criminal history categories, including the worst offenders with extensive prior criminal histories, and it is an outlier even with the most prolific opioid defendants with significant drug weights. And Your Honor, I will note for the record that the government appears to concede the fact that her sentence is an outlier when compared against the evidence provided by the U.S. Sentencing Commission. They do not appear to dispute that in their brief. The question really then becomes whether or not the sentence is substantively reasonable in light of this uncontroverted disparity. And I think Judge Gregory's concurrence in the Evans opinion provides the guidance in how this court should examine it in this case. In Evans, Judge Motz, in the opinion for the court, stated that indeed a district court may not even presume that a guideline range is reasonable. The fact that it is a guideline range creates the presumption, but that presumption is not a guarantee, Your Honor. And this court, like the Sentencing Commission, is charged by Congress to iron out those disparities. So in this case, it is a unique situation where the guideline sentence itself fails to properly reflect the 3553A considerations. The district court did a good job of going through a number of the 3553A factors. At JA 136, the district court discusses the nature and circumstance of the offense and the history and characteristics of Ms. Freeman. At 138, he discussed the need for the sentence to reflect the seriousness of the offense. He goes through five of the factors. And perhaps because Ms. Freeman is a defendant in this case, it's not a multi-defendant conspiracy. It's not a large case involving a significant number of defendants, nor is it tied to another indictment. The district court does not address unwarranted sentencing disparities. Now, as we address in the second half of our argument, this may be, in fact, due to the ineffective assistance provided by Ms. Freeman's counsel, who did not raise the issue with regard to the length of her sentence in his sentencing memorandum or in his arguments to the court at sentencing. I would point the court to Justice Alito's dissent in Gaul, where he cites U.S. v. Taylor. And he says, appellate review for abuse of discretion is not an empty formality. And when the trial court is required by statute to take specific factors into account in making a discretionary decision, the trial court must be reversed if it ignored or slighted a factor that Congress has deemed important. It is clear that Congress has deemed unwarranted sentencing disparities to be important, as Judge Gregory really hones in on in his concurrence in Evans. And for whatever reason, the district court slighted this issue of unwarranted sentencing disparities when it came to Ms. Freeman's sentence as it relates to similarly situated opioid defendants, both nationwide and within the Fourth Circuit. If there are no further questions with regard to this issue, I'm happy to turn to the second issue regarding the ineffective assistance provided by Ms. Freeman's counsel. Ms. Metcalf, I have one question. In establishing substantial discrepancy, what kind of ratio would be enough? One and a half times the average or two times the average? What do you think? Your Honor, I don't think Ms. Freeman is asking the court to us to adopt a bright line test of what ratio would be applied. I would only note that in this case, her sentence of 210 months, the median for similarly situated defendants is 75 months. That's defendants with over 10 million grams of marijuana equivalent opioids. The average is just over 95 months. So her sentence is more than double the average, and I'm not a good mathematician, but 75 is a whole lot less than 210, Your Honor. And so while we're not asking the court to establish a bright line test, I will say that the U.S. Sentencing Commission data, when plot using a line, reveals that the more appropriate sentence would have been a range of 75 to 150 months. Turning to the issue of ineffective assistance of counsel, if I may, Ms. Freeman was represented by appointed federal defender up until just before the sentence, and then she had retained counsel. The brief and argument relates only to retained counsel, Your Honors. The Strickland test makes it clear that there's a performance prong, and then there's a prejudice prong. And with regard to the performance prong, Ms. Freeman contends that her retained counsel's performance was deficient with respect to the prevailing professional norms and duties. He had a duty to investigate and research her case in a manner that was sufficient to support informed legal judgments. That's from this court's Carthorne decision. It is clear that retained counsel's ignorance of the law that was fundamental to her case, combined with his failure to perform basic research, resulted in unreasonable performance. And I point the court to JA 108, where the retained counsel at sentencing said, Your Honor, when asked about withdrawing the objections, said, Your Honor, none of these objections reduce the number that is relevant to this court. And with that in mind, we don't wish to dwell on those. The district court seemed somewhat shocked by this statement, and somewhat comical, because he says, Well, hold on. Let me ask my question again. He asked it repeatedly. Are you sure you want to withdraw all of these objections? And retained counsel says, These objections are not going to change, in essence, what the charges are. We believe the drug court is more pertinent than objections over what might be considered minimal, even if found to be brief. These are not minimal changes. Yes, Judge Quattlebaum. Ms. Metcalfe, your brief outlines some issues on ineffective assistance to counsel. And my question is really not to quarrel or even talk about that. It's to talk about the appropriateness of us looking at that right now, versus perhaps as a collateral attack. I'm not sure what the But we don't even have anything from counsel to provide an explanation. I know we have the possibility of doing that, but is it really advisable for us to do that without even hearing what the counsel's position would be? Your Honor, I do agree that it is more generally, ineffective assistance of counsel is more generally considered on indirect appeal, and is often more appropriate because of the lack of information contained in the record on appeal. In this case, however, where the ineffective assistance of counsel is obvious on the record, the court may consider it, and it is appropriate on direct appeal. Although unusual, there are not a lot of cases where ineffective assistance of counsel is considered on direct that counsel was not familiar with how objections work within the Fourth Circuit. Counsel did not understand how the bridge court works, did not understand that his client was not eligible for the bridge court, which is a, as your Honor is very well aware, it's a very small program. Very few defendants are admitted into the drug court program. She was not eligible, and he gave up valid objections and stated on the record that he felt they didn't matter. It's clear that she was not aware that he was going to drop that, and neither was the government or the court. There were agents sitting in the courtroom ready to address these objections. This demonstrates clearly from the record that he was not prepared, did not do his research, and was ignorant of the law and the rules. And this is further highlighted by his filing a civil motion for reconsideration afterwards, which is not allowed in a criminal case, which the district court appropriately pointed out in its text order response. To sum up, your Honors, we are requesting that this court reverse the district court and find that it abuses discretion with regard to the 210-month sentence and find that her counsel was ineffective and remand this matter for re-sentencing. Thank you, Ms. Metcalf. Mr. Watkins. Good morning, your Honors. My name is Bill Watkins, and I represent the government in this case. Your Honors, the government is asking you to affirm this sentence as substantively reasonable. If you look at what the district court did in this case based on a totality, you may proceed. Good morning, your Honors. Assuming you didn't hear anything I had to say, I'll introduce myself again. I'm Bill Watkins. I represent the government in this case, and we're asking that you affirm this district court's sentence and this matter on both grounds raised the reasonableness of the sentence as well as the ineffectiveness claim. First, your Honors, I believe that what the analysis. This is not a case where the district court mentions one factor or finds this to be a mine run of cases and relies on the guidelines. No, your Honors, this is an exhaustive analysis where the district judge goes through how this was an offense that went on for a significant period of time, that this defendant was a major supplier of pills, that this was a serious problem, the opioid epidemic in the District of South Carolina and nationwide. The district court looked at her prior state convictions for similar conduct, took that into account, and noted the state interaction had not changed Ms. Freeman's habits. The district judge listened to arguments about her drug addiction and took that into account when he recommended the RDAP program in the Bureau of Prisons and noted that this has a devastating effect on society. The district court also mentioned Ms. Freeman's family, her husband, the ages of her children, that he understood that she was going to have to be away from her family for, regrettably, a long time. But that is because of the decisions Ms. Freeman made and her conduct, and he gave her within guideline sentence, which is presumptively reasonable. Your Honors, I think when, Judge Greger, you're about to question me. Oh, well, you're very perceptive, yes. You said this is all her fault and those things that, at 18 years old, she became addicted to opioid because she had a serious spinal injury in the fall and that put her in a situation of a tailspin of being addicted to opioid. And as Ms. Metcalf has said, I think, happily so, our nation has responded differently to these things, unlike it did with the war on drugs that started in the late 60s. Congress appropriated money and all those things, and rightfully so, and they saw that this was treatment. And this was, so we're looking in the context of this, but a sentence of 210 months, they face in terms of the average that that kind of sentence, and this is not a procedural challenge at this point, it's substantive. And that is not whether things were a compilation of guidelines and non-defenseless arguments and those things procedurally, but we're talking about at the end, it's 210 months with the, I know it's a public kind of framework, she has, when she had a baby during the time, from the time of what the first, the discharge, the baby was born, correct? If her fifth child, her fifth child, right? And she was addicted to opioids since she was 18 years old. And you talked about major evidence that significant amount of these pills, she was taking them for herself, correct? That is what she told the court. It's undisputed though. I wouldn't say that, Judge, I would disagree because the first time she ever raised the issue of addiction is when she learned in the court system there was something called the bridge program, and dealing with the agents in her prior interviews, she never claimed to be an addict. She admitted to what she was doing, she was selling and dealing. But Judge Gregory, sir, I agree with you. Is this a sad situation for this defendant? Absolutely, sir. Is addiction a horrible thing to deal with? Absolutely, sir. But the question is, is this a reasonable sentence under the totality of the circumstances? And I believe that it is. And Judge, I know Ms. Metcalf has shown us these graphs and things. She's done very good work. She's a great lawyer in this town. But for example, she says that with a criminal history category of one to three, an offense level, and I assume she means a total offense level of at least 30, no weapon enhancement, which we don't have, and a large drug weight, most sentences run between 75 and 150 months there. But what that doesn't take into account, Judge, is we're not at just a level 30. She comes in at a level 36, well above a level 30 or 31. And unfortunately, it was because of decisions she made to abscond, to engage in new criminal conduct, to be arrested, which in itself is a swing. Had she not done that, Judge, she would have come in at a likely range of 87 to 108, which is what Ms. Metcalf says most folks like Ms. Freeman should get. But most folks aren't engaging in that sort of misconduct and shooting themselves in the foot. And I feel for her on that. I wish she had not done that. The problem is, and I know Ms. Metcalf took them, sorry I am, but they're connected. The ineffective assistance of counsel had a whole lot to do with what eventually became her level, the obstruction of justice and all those things. These arguments weren't even made. There are plenty of arguments to be made, perhaps, maybe, whether or not she should have been, had obstruction at all. I mean, she didn't have any place to go, and she went across the line with her family, and none of those things were made at all. So I know you're saying in the perfect world, if there was effective counsel, then that's where she would be. But when you put those together, do you defend the performance prong of Strickland in this case? Judge, I don't know exactly why counsel did what he did in this case in withdrawing the objections, as it was pointed out, that we don't have an affidavit, there's been no hearing in the district court. At best, I can speculate that counsel recognized that he did not have great objections, they were not meritorious, that he did not want the government to call two solid case agents to talk about aggravating conduct, and that he would try to throw himself on the court's mercy, get her in the bridge program, or a lower sentence. I don't think that was a bad decision, insofar as I don't think that the objections had much merit. Like, for example, Judge, you mentioned the obstruction of justice. It wasn't that just a hurricane came, and she went to Shelby because she was being evicted. She was told to come back to South Carolina, refused to, and then went on the run for six months, received new charges for drugs, and was trying to funnel drugs into a state prison. Respectfully, sir, I think under those facts, I can't imagine a district judge in this district not giving her obstruction or taking away her acceptance of responsibility for that sort of conduct. So we don't know exactly why counsel did what he did, but to the extent we have to speculate, I see a good and just reason. Ms. Freeman engaged in very bad behavior, and you didn't want, as counsel, case agents testifying, coming in and highlighting aggravating factors, and therefore he withdrew his objections and made a very compelling argument about her addiction and her family circumstances, and he tried to hang his hat on that. It did not go over with the district judge, and he sentenced her to the low end of the guidelines. Again, we can't get in the district judge's head, but perhaps it was a very good argument and saved her from a high end of $240,000. I appreciate your response. Thank you so much, Mr. Watkins. Yes, sir. Unless the panel has any further questions for me, I'll rely on our brief, but I'm happy to answer anything else if judges Butler, Obama, or Floyd have anything for me. Mr. Watkins, I do have one question. I think I recall that you put in the brief that the judge said that he would impose the same sentence over. By that, are you asking us to find no prejudice any time a trial court makes a blanket statement such as that and impose the same sentence even if it's miscalculated? No, sir. I'm just simply asking you to follow the law of Savion Matute, that if there's a miscalculated guideline range, but the district court makes clear that even in reasonable, then there is no reason to send it back and there's no reason to find any prejudice there. So I'm simply asking that Savion Matute be followed to the extent you see a problem with the guidelines because this district judge on two occasions made it very clear that he would have a motion to reconsider where trial counsel tried to bring some other points up in the objections that he had decided to withdraw. This district judge, again, went back through 3553A factors, the length of the criminal activity, the seriousness of the conduct, the criminal record, and said he would not change one jot or tittle of the sentence and I think Savion Matute, we must respect that and it would not be a good use of resources to send that back for him to impose the same 210 month sentence. Mr. Watkins, do you think in order to find substantive unreasonableness that the judge has to make a mistake? I would say he has to make a mistake in his analysis and the totality, Judge Gregory. I mean, I think there is a continuum of reasonable sentences. Had Ms. Freeman come before you three gentlemen separately as trial judges, it would be very conceivable she would receive three different sentences and all three could be substantively reasonable. Maybe not. We don't know the full circumstances, but I think the error would be in the totality of his analysis that he had to overlook so much or make a grave mistake for it to be unreasonable. So that would be my view of it, Chief Judge Gregory. If there's nothing else for me, I will stand on my brief but happy to answer any other questions. Thank you, Judge Gregory. I'd like to just briefly address a few of the things that were addressed by Mr. Watkins. First, Mr. Watkins repeatedly points to the totality of the circumstances, but as you, Judge Gregory, explained in your concurrence in Evans, the totality of the circumstances substantive reason was calculus demands that the appellate court proceed beyond a formalistic review of whether the district court recited and reviewed the 3553A factors and ensure that the sentence caters to the individual circumstances of the defendant, yet retains a semblance of consistency with similarly situated defendants, and that is what is lacking here. And it may be lacking because Ms. Freeman's retained counsel was ineffective and didn't raise this issue. It may be lacking because the district court was not fully aware of this nationwide trend that is reflected in the data from the Sentencing Commission. This has been an evolving area nationwide with regard to opioid defendants, as Your Honor points out. The current administration has launched significant changes with regard to opioid defendants as did the previous administration. There is significant civil litigation against the manufacturers of opioids, and there's significant litigation and action at the state level with regard to these defendants. So the nation as a whole, the District of South Carolina, the Fourth Circuit has changed in how they view these defendants, and therefore the sentences have all trended lower, which the data reveals. Specifically with regard to Mr. Watkins' point about the data concerning Ms. Freeman, he stated that this data shows somebody with an offense level 30. In fact, the charts that we've provided, and I point the court to page 27 of my brief, you will see that that reflects Fourth Circuit opioid defendants with a criminal history category of 1 to 3, a drug weight of 1 million to 50 million grams, and an offense level of 30 to 60 with no weapon enhancement. And it is clear there that Ms. Freeman's sentence is there, again, an outlier, significantly an outlier. The court, when going through the 55-53 A factors, did not go through, when it went back and it said I would sentence the same, it did not go back and look at unwarranted sentencing disparities. And if I can address briefly Mr. Watkins' argument that the assumed harmless error standard should apply here, that standard does not apply because the district court did not decide any issues with regard to these objections because counsel withdrew those objections. So that standard says that there has to be knowledge that the district court would have reached the same result even if it had decided the because counsel withdrew these valid objections. And these objections are valid. For example, with regard to obstruction, the evidence shows that the testimony of sentencing, which is the only evidence in the record with regard to her flight, shows that she was evicted, she was pregnant, she stated on the record that she called her probation officer, said I'm going to my parents' house in Shelby where she was allowed to go. So those are very valid objections and there's significant case law that says that kind of panic instinctive flight does not rise to the level of an obstruction of justice enhancement. But the district court did not decide those guidelines issues, so therefore there cannot be an assumption that that decision was reasonable. There also shouldn't be an assumption that the sentence is reasonable where it was reached due to the ineffectiveness of counsel. Finally, with regard to ineffective assistance, what the record shows is that the retained counsel hung his hat on drug court, which Mr. Watkins points out, but she was never eligible for a drug court. So to abandon non-frivolous objections based on an argument that she should be admitted to a drug court program to which she was ineligible for admittance is on its face evidence of ineffective assistance of counsel. And then combine that with his failure to raise the fact that this 210-month sentence was significantly greater than the sentences received by other defendants. We contend should compel this court to reverse the district court and remand for resentencing in light of all of the 3553A factors, including the disparity between her sentence and other similarly situated defendants. If there's nothing further, I yield the remainder of my time. Thank you, counsel. Ms. Metcalf, I note that you were caught upon it, and I give a special thanks to you, lawyers like yourself, for taking these cases and helping us in very thorough work on cases, very helpful and very difficult cases. I really appreciate it on behalf of the court. Mr. Watkins, of course, we recognize your able representation of the United States. Counsel, we can't come down and greet you in our normal fashion. We miss that. It's a very important part. I think it's a great tradition, but we can't do that. But please know that nonetheless, we appreciate what you do and your help and very ably presenting before us. I wish that you would be safe and stay well. Thank you, counsel. Thank you, Your Honor. Thank you, judges. Thank you.
judges: Roger L. Gregory, Henry F. Floyd, A. Marvin Quattlebaum Jr.